PROSKAUER ROSE LLP
Joseph Baumgarten
Stephen M. Ahron
Eleven Times Square
New York, New York 10036
jbaumgarten@proskauer.com
sahron@proskauer.com
Tel:   (212) 969-3000
Fax:   (212) 969-2900
*Attorneys for Plaintiff National Hockey League*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

| | | |
|---|---|---|
| NATIONAL HOCKEY LEAGUE, | : | Case No: |
| | : | |
| Plaintiff, | : | **COMPLAINT** |
| | : | |
| v. | : | |
| | : | |
| NATIONAL HOCKEY LEAGUE | : | |
| PLAYERS' ASSOCIATION, | : | |
| | : | |
| Defendant, | : | |

-------------------------------------------------------------X

The National Hockey League ("NHL or "League") brings this action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §§ 185 *et. seq.*, to vacate the Award of Neutral Discipline Arbitrator, James Oldham, dated March 10, 2016.  In support, the NHL alleges as follows:

## PRELIMINARY STATEMENT

1.      On February 17, 2016, NHL Commissioner Gary Bettman ("Commissioner Bettman") issued a twenty-two (22) page Order affirming NHL Senior Executive Vice President of Hockey Operations Colin Campbell's decision to suspend Calgary Flames defenseman, Dennis Wideman, for twenty (20) games for on-ice conduct violative of the League Playing Rules.  Commissioner Bettman found, in accordance with his powers under the National Hockey League – National Hockey League Players' Association Collective Bargaining Agreement ("CBA") and League Playing Rules allowing for Supplementary Discipline, that Mr. Wideman's suspension was supported by clear and convincing evidence.

2.      The conduct giving rise to the suspension occurred during a January 27, 2016 game between the Calgary Flames and the Nashville Predators.  Nearly midway through the second period, Mr. Wideman grasped his stick with both hands and, without provocation, forcefully struck NHL linesman Don Henderson from behind with the shaft of his stick.  The blow, which was described in the victim's testimony as feeling as though he had "got[ten] hit by a bus," sent Mr. Henderson crashing face forward onto the ice.

3.      The hit caused Mr. Henderson to suffer significant injuries, including a concussion, which have prevented him from returning to work as an NHL linesman.

4.      The National Hockey League Players' Association ("NHLPA" or "Association") appealed the Commissioner's decision to a Neutral Discipline Arbitrator ("NDA") pursuant to

the CBA. The NDA reduced the Supplementary Discipline imposed on Mr. Wideman to ten (10) games in an Opinion and Award dated March 10, 2016.

5.      As set forth more fully below, the Award must be vacated because the NDA exceeded his authority under the CBA and applied his own brand of industrial justice by disregarding the standard of review set forth in the CBA. The NDA conducted a *de novo* review of Mr. Wideman's suspension whereas the CBA provides explicitly that the NDA's review is limited to determining whether the Commissioner's decision on Supplementary Discipline is supported by "substantial evidence."

6.      The "substantial evidence" standard of review in the CBA significantly limits the NDA's authority and requires considerable deference to the Commissioner's decision such that the NDA should not have disturbed the decision unless he found that a reasonable person could not have possibly agreed with it. The NDA did not apply the CBA mandated standard of review. Rather, the NDA exceeded his authority by substituting his "own version" of what occurred on the ice for that of the Commissioner. At bottom, the NDA overturned the Commissioner's Order because his opinion differed from that of the Commissioner, not because the Commissioner's Order was not supported by substantial evidence.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and 29 U.S.C. § 185.

8.      Venue is proper in this District pursuant to 29 U.S.C. § 185(a) and 28 U.S.C. § 1391.

## PARTIES

9.      The National Hockey League is a joint venture organized as an unincorporated association and is the sole and exclusive bargaining representative of its member clubs.  The NHL's principal place of business is New York, New York.

10.      The National Hockey League Players' Association is the sole and exclusive bargaining representative of the NHL Players.  The NHLPA's principal place of business is Toronto, Ontario, Canada. The NHLPA regularly represents Players in the Southern District of New York, and some of its members reside in this judicial district.

## FACTS

11.      The parties are bound by a CBA negotiated between the NHL (on behalf of the NHL member clubs) and the NHLPA (on behalf of all NHL players).  Relevant portions of the CBA are attached hereto as Exhibit A.

The Underlying Incident:

12.      Dennis Wideman is a defenseman for the Calgary Flames.

13.      On January 27, 2016, in a game between the Calgary Flames and Nashville Predators, Mr. Wideman made a pass from his defensive corner and was legally checked into the boards by Nashville's Miika Salomaki.

14.      As play continued, Mr. Wideman skated almost half the length of the ice parallel to the boards towards Calgary's bench.  Before Mr. Wideman reached the blue line, he raised his stick high in the air with one hand and tapped it on the ice to call for a line change.

15.      As Mr. Wideman neared the bench, he approached linesman Don Henderson, as the linesman was skating slowly backwards.

16.      As Mr. Wideman approached the linesman from behind, but while still several feet from Mr. Henderson, Mr. Wideman lifted his stick off the ice and clenched it with both

hands. As the two converged, Mr. Wideman violently blindsided Mr. Henderson with the shaft of his stick.

17.     The force of the blow sent Mr. Henderson face first on to the ice.

18.     Without stopping, Mr. Wideman skated around Mr. Henderson's prone body and proceeded to the Calgary bench.

19.     Since the hit was away from the game action, none of the officials saw what had happened.  Therefore, no on-ice penalty was called on Mr. Wideman.

20.      The hit left Mr. Henderson concussed and injured.   Mr. Henderson's injuries have prevented him from returning to work as an NHL lineman as of this writing.

21.     On January 28, 2016, Mr. Wideman was suspended indefinitely by the NHL pending an in-person Supplementary Discipline hearing before Colin Campbell, NHL Senior Executive Vice President of Hockey Operations.

22.     On January 31, 2016, four (4) days after the incident and three (3) days after Mr. Wideman had been suspended, the NHLPA retained Dr. Paul Comper, a neuropsychologist, and Dr. Jeffrey Kutcher, a neurologist to assist in its case on behalf of Mr. Wideman.

23.     The NHLPA asked both Dr. Comper and Dr. Kutcher to address "whether the Player's ability to formulate an intention to make contact with the [linesman] was adversely affected at . . . the time of the events and, if so, the extent to which his ability to formulate an intention was affected."

24.     Dr. Comper interviewed Mr. Wideman that same day – four days after the incident.  The interview was done remotely via "FaceTime" and lasted approximately thirty-five (35) minutes.

25.     At the time of the interview, Mr. Wideman was in Scottsdale, Arizona

vacationing during the NHL's annual All-Star break.  On said vacation, Mr. Wideman engaged

in physical activities without restriction (*e.g.*, hiking and golfing).

26.     Dr. Kutcher interviewed Mr. Wideman on February 1, 2016. This interview was

also conducted via "FaceTime."

The Collective Bargaining Agreement Provisions & Playing Rules at Issue:

27.     Article 18 of the CBA governs Supplementary Discipline for on-ice conduct.

Supplementary Discipline for on-ice conduct is defined as "Player conduct either on the ice or in

the Player or penalty bench areas vis-à-vis other participants in the game (i.e., other Players,

coaches, or on-ice officials) in violation of the League Playing Rules."  Ex. A, Art. 18.1.

28.     Article 18.2 provides that the following factors will be taken into account in

deciding on Supplementary Discipline:

(a) The type of conduct involved: conduct in violation of League Playing Rules, and
whether the conduct is intentional or reckless, and involves the use of excessive and
unnecessary force.  Players are responsible for the consequences of their actions.

(b) Injury to the opposing Player(s) involved in the incident.

(c) The status of the offender and, specifically, whether the Player has a history of being
subject to Supplementary Discipline for On-Ice Conduct.  Players who repeatedly
violate League Playing rules will be more severely punished for each new violation.
(Emphasis in original.)

(d) The situation of the game in which the incident occurred, for example: late in the
game, lopsided score, prior events in the game.

(e) Such other factors as may be appropriate in the circumstances.

*See* Ex. A.

29.     NHL Playing Rule 28 also addresses Supplementary Discipline and provides that

in addition to any automatic fines and suspensions imposed under the rules, "the Commissioner

may, at his discretion, investigate any incident that occurs in connection with any Pre-season, Exhibition, League or Playoff game and may assess additional fines and/or suspensions for any offense committed during the course of a game or any aftermath thereof by a player…, whether or not such offense has been penalized by the Referee." Relevant portions of the NHL Playing Rules are attached hereto as Exhibit B.

30.      NHL Playing Rule 40 ("Physical Abuse of Officials") mandates a game misconduct penalty for any player who "deliberately applies physical force in any manner against an official, in any manner attempts to injure an official, physically demeans, or deliberately applies physical force to an official solely for the purpose of getting free of such an official during or immediately following an altercation." Ex. B, R. 40.1.

31.      Rule 40 further provides for three categories of offenses and directs that the category be determined by the on-ice officials immediately after a game in which a game misconduct penalty is imposed. *See id.* at R. 40.5.

32.      Under Rule 40, a "Category I" offense, the most severe, identifies three circumstances in which a minimum suspension of twenty games is imposed. Specifically, a player is guilty of a Category I offense if the player:

    a.   Deliberately strikes an official and causes injury; or

    b.   Deliberately applies physical force in any manner against an official with intent to injure; or

    c.   In any manner attempts to injure an official.

*See id.* at R. 40.2.

33.      For purposes of applying the second prong of Category I offenses, Rule 40.2 expressly defines the phrase "intent to injure" to mean "any physical force which a player knew

or should have known could reasonably be expected to cause injury."  By its express terms, the rule does not require a specific intent to injure in order for an on-ice act to constitute a Category I offense. *See id.*

The Initial Disciplinary Decision:

34.     On February 2, 2016, a hearing was held before Mr. Campbell in Toronto, Ontario.  All parties, including Mr. Wideman, were provided a full and fair opportunity to be heard.  The NHLPA raised no objections – procedural or otherwise – with the conduct of the disciplinary hearing.

35.     On February 3, 2016, the League announced the decision assessing Supplementary Discipline to Mr. Wideman by issuance of a press release and an explanatory video (https://www.nhl.com/news/dennis-wideman-suspended/c-278258934), as is the regular practice of the NHL.  Specifically, Mr. Campbell ruled that Mr. Wideman's actions warranted a twenty (20) game suspension.

36.     That evening, the NHLPA filed a notice of appeal pursuant to Article 18.12 of the CBA.

Wideman's Appeal to Commissioner Bettman:

37.     Article 18.12 of the CBA provides for an appeal to the Commissioner of any decision regarding Supplementary Discipline for On-Ice Conduct. *See* Ex. A.

38.     Commissioner Bettman is required by the CBA to hold an in-person hearing where, as here, the underlying disciplinary decision results in a suspension of six (6) or more games and such decision is appealed. *See id.*

39.     The Commissioner held such a hearing on February 10, 2016 at the League offices in New York City.  At the one-day hearing, all parties were given a full and fair

opportunity to be heard and put on evidence. The evidence included video footage of the incident and live testimony from witnesses. The NHL presented testimony from Mr. Henderson. The NHLPA presented testimony from Dr. Comper, Dr. Kutcher, and Mr. Wideman.

40.     The NHLPA argued that Mr. Wideman should not have been suspended for his actions because he experienced a diminished mental and/or physical capacity such that he was unable to avoid contact with Mr. Henderson. It argued that Wideman did not commit a "deliberate" act of misconduct and did not have the requisite "intent to injure" to justify any form of Supplementary Discipline.

Commissioner Bettman's Order & Findings:

41.     On February 17, 2016, Commissioner Bettman issued a twenty-two (22) page Order in which he affirmed the twenty (20) game suspension of Mr. Wideman and found that it was supported by clear and convincing evidence. Commissioner Bettman's Order ("Order") is attached hereto as Exhibit C.

42.     As a starting place, Commissioner Bettman found that Mr. Wideman was not subject to an automatic suspension under Playing Rule 40 because the on-ice officials did not call a game misconduct penalty because they did not observe the incident. *See* Ex. C at 4-5; *see also* Ex. B, R. 40.5.

43.     Commissioner Bettman noted that Article 18.2(e) allows for the Commissioner to consider "[s]uch other factors as may be appropriate in the circumstances," when contemplating Supplementary Discipline. The Commissioner found the existence of Rule 40 to be one such appropriate factor. Specifically, he found Rule 40 to provide a "useful (albeit non-binding) framework (together with the applicable Article 18.2 factors quoted above) for determining discipline." Ex. C at 5.

44.    Commissioner Bettman accepted the NHLPA's proffer of Drs. Comper and Kutcher as experts. *See id.* at 8, 11.

45.    Although the Commissioner accepted that Drs. Comper and Kutcher are experts in neuropsychology and neurology respectively, he found their reports and testimony speculative, at times contradictory, and lacking support. Moreover, the Commissioner concluded that their opinions and testimony were wholly inadequate to contradict the clear and convincing evidence supporting the decision to suspend Mr. Wideman including, but not limited to, video footage of the incident itself. *See id.* at 11, 21.

46.    The Commissioner also found that Mr. Wideman's testimony lacked credibility and was, at times, inconsistent with Dr. Kutcher's suggestion that he lacked "situational awareness." *Id.* at 21.

47.    The Commissioner's Opinion explained that the video of the incident and Mr. Wideman's own testimony offered clear and convincing evidence in support of the suspension and proved that, even assuming some level of distress on Mr. Wideman's part as a result of the Salomaki check, Wideman exhibited no sign that he was disoriented in a material way. *See id.* at 21.

48.    Commissioner Bettman found that Mr. Wideman's conduct, as reflected in the video footage of the incident, fit within the framework of a Category I offense because:

      a.    "Mr. Wideman struck Mr. Henderson with the shaft of his stick and caused him injury" and

      b.    "Mr. Wideman deliberately applied physical force in a way that a player would know (or should know) could reasonably be expected to cause injury."

Ex. C at 5-6.

49.     The Commissioner concluded that:

a.   A significant suspension was appropriate;

b.   Given the severity of the conduct involved, a lesser penalty was not appropriate; and

c.   In light of Mr. Wideman's prior exemplary disciplinary record, he would not increase the suspension, as he was empowered to do by the CBA, imposed by Mr. Campbell.

*See id.* at 22.

Wideman's Appeal to the Neutral Discipline Arbitrator:

50.     The NHLPA appealed Commissioner Bettman's Order to a Neutral Discipline Arbitrator as permitted by Article 18.13 of the CBA.  *See* Ex. A.

51.     The limited right to appeal the decision of the Commissioner to a Neutral Discipline Arbitrator is a newly created right in the current CBA.  Indeed, this is the first appeal to have occurred under the standards set forth in Article 18.13.  A true and correct copy of the NDA's Opinion and Award is attached hereto as Exhibit D.

52.     The NDA's authority is specified in, and limited by, the terms of the CBA, which provides that the Commissioner's decision is reviewable only to determine whether it is supported by "substantial evidence."  Article 18.13(c) provides that "[t]he NDA shall hold an in-person hearing and shall determine whether the final decision of the League regarding whether the Player's conduct violated the League Playing Rules and whether the length of the suspension imposed were supported by substantial evidence."  Ex. A.

53.     The NDA hearing was conducted at the offices of Weil, Gotshal & Manges, counsel to the NHLPA, in New York on February 25 and 26, 2016 and post-hearing briefs were filed by the parties on March 4, 2016.  *See* Ex. D at 3.

54.     The NHLPA presented testimony by Dr. Comper, Dr. Kutcher, Dennis Wideman, Mathieu Schneider (Special Assistant to the Executive Director of the NHLPA), and Brad Treliving (General Manager of the Calgary Flames).  *See id*.

55.     The NHL presented testimony by Stephen Walkom (Senior Vice President and Director of Officiating for the NHL), Don Henderson, and Dr. Ian Auld (team physician for the Calgary Flames).  *See id*.

56.     While the NDA articulated the issue to be decided in the appeal as whether the Commissioner's decision to affirm the twenty (20) game suspension of Mr. Wideman was supported by substantial evidence (*see id*. at 6) that is not, in fact, the standard he applied. Instead, he applied a *de novo* standard of review by reviewing the evidence anew, and then determining whether his conclusions were the same as, or different from, Commissioner Bettman's.  This is not the deferential standard that the parties negotiated for, and agreed to, in the CBA.

57.     The NDA agreed with Commissioner Bettman's finding that Rule 40 provides an appropriate framework for analysis.  *See id*. at 13.

58.     However, the NDA found that "Mr. Wideman did not, **in [his] opinion**, 'deliberately strike' Henderson within the meaning of that phrase in Rule 40.2."  *Id*. at 14 (emphasis added).

59.     Mr. Oldham also substituted his own judgment concerning Mr. Wideman's "intent to injure" for that of Commissioner Bettman.  In so doing, Mr. Oldham failed to evaluate whether the Commissioner's decision was supported by substantial evidence. *See id*. at 14.

60.     The NDA decided that:

    a.    Mr. Wideman's on-ice behavior "constituted physical abuse of an official calling for Supplemental Discipline for on-ice conduct";

    b.    "The Commissioner's use of League Rule 40 ('Physical Abuse of Officials') as a framework for analysis was appropriate"; but

    c.    That **"[i]n [the NDA's] judgment,** the proper penalty should have been that specified in Rule 40.3" rather than that imposed for a violation of Rule 40.2.

*Id*. at 17 (emphasis added).

<u>The Neutral Discipline Arbitrator Exceeded his Authority Under the CBA</u>:

61.     The NDA, in excess of his authority under the CBA, substituted his own judgment for that of the Commissioner.

62.     Article 18.13(c) of the CBA provides explicitly that the NDA's singular purpose is to determine whether there was "substantial evidence" to support the Commissioner's decision concerning the suspension imposed.

63.     The NDA exceeded his authority under the CBA by conducting a *de novo* review instead of adhering to the "substantial evidence" standard – for which the law is clearly defined.

64.     The NDA acknowledged that "interpretations of exactly what happened can and do differ." *Id*. at 6.

65.     Yet, time and again, rather than adhering to the limits of his authority under the CBA, the NDA substituted his "own version" of events instead of analyzing whether there was

"substantial evidence" supporting the Commissioner's decision to affirm Mr. Wideman's suspension.  In so doing, the NDA's opinion is rife with examples of him applying his own brand of industrial justice including, but not limited to, the following:

    a.  "As has been evident throughout this proceeding, interpretations of exactly what happened can and do differ.  I state may [sic] own version in detail below . . ."  *Id.* at 6.

    b.  "My frame-by-frame review of the video produces the following narrative . . ." *Id.* at 10.

    c.  "Linesman Henderson testified that he felt as though he had been hit by a bus. He described this feeling as due to have been hit 'up in the shoulders' but it seems much more likely that the hit that he felt (and the only hit that could have produced his concussion) was when his head hit the boards on the way down." *Id.* at 11.

    d.  "Wideman did not, in my opinion, 'deliberately strike' Henderson within the meaning of that phrase in Rule 40.2." *Id.* at 14.

    e.  "Commissioner Bettman states in his opinion that, 'Mr. Wideman struck Mr. Henderson with the shaft of his stick and caused him injury.'  As is clear from my analysis of the video, above, I do not share this interpretation of what the video shows." *Id.*

    f.  "At the end of his opinion, the Commissioner recognized that a lesser penalty than a 20-game suspension was possible, but he saw no basis for it. Here, I disagree." *Id.* at 15.

g.  "In my judgment, the proper penalty should have been that specified in League
Rule 40.3.  Taking into account Wideman's eleven years of discipline-free
performance as a professional hockey player, there is no occasion to go beyond
the ten game minimum specified in Rule 40.3."  *Id.* at 17.

66.  Ultimately, the NDA determined that Mr. Wideman's actions more "easily" fit
into Category II offenses rather than Category I (*see id.* at 15) – as determined by Commissioner
Bettman, to whom he was required to give substantial deference.

67.  The NDA did not conclude that the Commissioner's Order was not supported by
substantial evidence.  Instead, he overturned the Commissioner's Order because his opinion
differed from that of the Commissioner.   The NDA disregarded the applicable standard of
review as set forth in the CBA, and in doing so, exceeded his authority.

## COUNT 1- VACATUR OF THE ARBITRATION AWARD

68.  The NHL repeats and re-alleges Paragraphs 1- 67 as if set forth fully herein.

69.  The Neutral Discipline Arbitrator exceeded his authority under the CBA and
manifestly disregarded the law.

70.  By virtue of these violations, the NHL is entitled to vacatur of the NDA's Opinion
and Order.

## PRAYER FOR RELIEF

**WHEREFORE**, the NHL respectfully requests that this Court enter an Order:

(a)  Vacating the NDA's Award and reinstating the Commissioner's Order;

(b)  Entering judgment in favor of the NHL against the NHLPA; and

(c)  Providing the NHL with such other and further relief as the Court deems proper.

New York, NY
Dated:  June 8, 2016

PROSKAUER ROSE LLP
Joseph Baumgarten
Stephen M. Ahron
Eleven Times Square
New York, New York 10036
jbaumgarten@proskauer.com
sahron@proskauer.com
Tel:    (212) 969-3000
Fax:    (212) 969-2900
*Attorneys for Plaintiff National Hockey League*