# EXHIBIT D

**IN THE MATTER OF APPEAL BETWEEN**

**National Hockey League Players' Association**

    **and**                                                Appeal of Dennis Wideman Suspension

**National Hockey League**                    Opinion Issued:  March 10, 2016

**Before James Oldham,**
       **Neutral Discipline Arbitrator**

**Appearances:**

    For the NHLPA:

        **Roman Stoykewych, Esq.**
        **Don Zavelo, Esq.**
        **20 Bay Street**
        **Suite 1700**
        **Toronto, Ontario**
        **Canada M5J 2N8**

        -and-

        **Bruce S. Meyer, Esq.**
        **John R. Gerba, Esq.**
        **Weil, Gotshal & Manges LLP**
        **767 Fifth Avenue**
        **New York, New York 10153**

    For the NHL:

        **Joseph Baumgarten, Esq.**
        **Ebony Ray, Esq.**
        **Proskauer Rose LLP**
        **Eleven Times Square**
        **New York, New York 10036**

<u>**Opinion and Order**</u>

**NHLPA and NHL**                                                                                                **March 10, 2016**
**Appeal of Dennis Wideman Suspension**

<u>**Background**</u>

This matter is the appeal by the National Hockey League Players Association ("PA") of the opinion issued by National Hockey League ("NHL") Commissioner Gary B. Bettman on February 17, 2016 affirming a 20-game suspension imposed on Calgary Flames defenseman Dennis Wideman on February 3, 2016.  The 20-game suspension was issued by the NHL's Senior Executive Vice President Colin Campbell.  The suspension was the result of a collision between Dennis Wideman and Linesman Donald Henderson during the second period of a January 27, 2016 game between the Flames and the Nashville Predators.  The collision was recorded on video.  In keeping with customary practice, Campbell's opinion upholding the 20-game suspension was also recorded on video and was released by the NHL to the media in that format, along with a press release.

The first appeal hearing, conducted by Commissioner Bettman, followed the procedures specified in Article 18.2 of the Collective Bargaining Agreement ("CBA"), quoted in full below.  It was conducted on February 2, 2016, and the principal evidence before the Commissioner was the video footage of the collision.  In addition, the PA presented video footage of other on-ice collisions between players and officials, plus live testimony by the player, Dennis Wideman.  On behalf of the League, the Linesman (Donald Henderson) testified in person.  Also testifying in person on behalf of the PA weere two physicians, Dr. Paul Comper and Dr. Jeffrey Kutcher.  Commissioner Bettman accepted the testimony of Drs. Comper and Kutcher as that of expert witnesses -- professional neuropsychologists with concussion expertise.  The Commissioner noted in his opinion, however, that

neither doctor had been a treating physician for Dennis Wideman; both had been retained by the PA to conduct "face time" interviews with Wideman several days after the January 27th game.

In his 22-page opinion issued on February 17, 2016, Commissioner Bettman stated the standard of review specified in Section 18.12 of the CBA – that he was to determine whether the suspension decision that had been issued "was supported by clear and convincing evidence." The Commissioner acknowledged that no penalty was issued at the January 27th game under Rule 40 ("**Physical Abuse of Officials**") since the collision had been unobserved on the ice. Instead, the 20-game suspension was issued as Supplementary Discipline for on-ice conduct under Article 18, but early in his opinion, Commissioner Bettman stated his finding "that the standards set forth in Rule 40 provide an appropriate framework for consideration of whether to impose discipline, and if so, in what amount."[1] He recognized also the applicability of the factors itemized in Article 18.2 of the CBA (quoted below) but nothing in those factors materially affected the decision he reached. In his opinion he reviewed in detail the testimony that had been presented by Drs. Comper and Kutcher, but he concluded that this expert testimony "was speculative, at times contradictory, lacked support and was wholly insufficient to rebut the clear and convincing evidence provided by the video footage of the incident."[2] Commissioner Bettman concluded that the conduct by Dennis Wideman as reflected in the video footage "fits easily within the framework of Category I offenses," as specified in League Rule 40.2. That Rule calls for a minimum of a 20-game suspension, and Commissioner Bettman stated that he did not see a basis for a lesser penalty, "particularly given the severity of the conduct involved."[3]

As permitted by the provisions of Article 18.13 ("Appeals to Neutral Discipline Arbitrator"), the PA appealed Commissioner Bettman's decision to the undersigned, the Neutral Discipline

---

[1] Bettman Opinion, p.4. (The Bettman opinion was produced at the NDA hearing as the first document in a binder containing numerous exhibits, collectively designated as Joint Exhibit 1.)
[2] Bettman Opinion, p.21.
[3] Bettman Opinion, p.22.

2

Arbitrator ("NDA").[4]  The NDA hearing was conducted at the offices of Weil, Gotshal & Manges in New York City on February 25 and 26, 2016.  Post-hearing briefs were filed by the parties, received electronically by the NDA on Friday, March 4.  At the hearing, sworn testimony was presented by the PA from Dennis Wideman, Mathieu Schneider (Special Assistant to the Executive Director of the PA), and Brad Treliving (General Manager of the Calgary Flames).  Testimony was presented for the NHL by Stephen Walkom (Senior Vice President and Director of Officiating for the NHL), by the Linesman (Donald Henderson), and by Dr. Ian Auld (the lead team physician for the Calgary Flames).

### Applicable Collective Bargaining Contract Provisions and League Rules

**CBA PROVISIONS:**          **ARTICLE 18**

**SUPPLEMENTARY DISCIPLINE FOR ON-ICE CONDUCT**

*18.1   Supplementary Discipline for On-Ice Contact.*  "Supplementary Discipline for On-Ice Conduct" means any supplementary discipline imposed by the Commissioner or his designees for Player conduct either on the ice or in the Player or penalty bench areas vis-à-vis other participants in the game (i.e., other Players, coaches or on-ice officials) in violation of the League Playing Rules.  Supplementary Discipline for On-Ice Conduct may take the form of a fine or a suspension.  Notwithstanding anything stated in Article 17 (Grievances) of this Agreement, all incidents involving review by the League (i.e., the Commissioner or his designee) for Supplementary Discipline for On-Ice Conduct will be processed in accordance with this Article.

*18.2   General.*  It is the parties' intention to impose Supplementary Discipline for On-Ice Conduct in a swift, effective and consistent manner with respect to conduct prescribed by League Playing Rules, including the use of excessive and unnecessary force and reckless acts resulting in injury.  In doing so, however, the parties do not intend to alter the basic fabric of our game.  In deciding on Supplementary Discipline for On-Ice Conduct, the following factors will be taken into account:

    (a)   The Type of conduct involved:  conduct in violation of League Playing Rules, and whether the conduct is intentional or reckless, and involves the use of excessive and unnecessary force.  Players are responsible for the consequences of their actions.

    (b)   Injury to the opposing Player(s) involved in the incident.

    (c)   The status of the offender and, specifically, whether the Player has a history of being subject to Supplementary Discipline for On-Ice Conduct.  <u>Players who repeatedly violate League Playing Rules will be more severely punished for each new violation</u>.

---

[4] The position of Neutral Discipline Arbitrator was newly created in the current CBA, effective September 16, 2012.  This is the first appeal to have been implemented under the standards set forth in Article 18.13 of the CBA.

3

      (d)      The situation of the game in which the incident occurred, for example: late in the game, lopsided score, prior events in the game.

      (e)      Such other factors as may be appropriate in the circumstances.

*   *   *

**18.9**   *In-Person Hearing (6 or More Games*). If the preliminary review indicates that a suspension of six (6) or more games may be appropriate and/or further investigation is required, an in-person hearing will be conducted as follows:

      (a)      The Player shall remain suspended while the investigation and hearing is being conducted.

      (b)      Prior to the hearing, and as soon as practicable after scheduling of the hearing, the League shall provide to the NHLPA, in accordance with Exhibit 3, with the following, if available: (i) video footage, (ii) written reports of on-ice officials and Officiating Managers, and (iii) written reports from a doctor(s) based on an examination of a Player involved in the incident in question, or written medical information from the Club concerning a Player involved in the incident in question if a doctor's report is not available.

      (c)      The Player has a right to appear at an in-person hearing and may, with the assistance of a representative of his choosing, present evidence and argument in support of his position.

      (d)      Representatives of the Club and the NHLPA may also attend and participate in the hearing.

*   *   *

**18.12**   *Appeal to Commissioner.* The NHLPA, on the Player's behalf, may file an appeal to the Commissioner of any decision regarding Supplementary Discipline for On-Ice Conduct imposed by the League. The appeal shall be filed in writing no later than forty-eight (48) hours after the League's notification to the NHLPA of its determination. If the term of the suspension is ongoing, the Player shall remain suspended pending the appeal (but not longer than the duration contained in the initial decision). The Commissioner shall endeavor to hear all appeals on an expedited basis and will determine whether the decision was supported by clear and convincing evidence. In the event the League's underlying decision results in a suspension of five (5) NHL games or less, the Commission shall determine in his sole discretion whether any type of hearing is required related to such review, and if he determines such a hearing is required, whether to hold a telephonic or in-person hearing. In the event the League's underlying decision results in a suspension of six (6) NHL games or more, the Commissioner shall conduct an in-person hearing. The Commissioner shall have the authority to consider any evidence relating to the incident even if such evidence was not available at the time of the initial Supplementary Discipline for On-Ice Conduct decision. Except in cases involving a suspension of six (6) or more NHL Games which shall be subject to an appeal pursuant to Section 18.13 below, the decision of the Commissioner in an appeal shall be final and binding in all respects and not subject to review. For purposes of Section 18.13 below, the Commissioner's decision shall

represent the complete and final decision of the League regarding whether the Player's conduct violated League Playing Rules, as well as the length of the suspension imposed on the Player.

*18.13  Appeals to Neutral Discipline Arbitrator.*

(a) If the Commissioner determines that the Player's suspension is six (6) or more NHL Games, after an appeal pursuant to Section 18.12 above, the NHLPA, on the Player's behalf, may file an appeal of the Commissioner's determination to the Neutral Discipline Arbitrator ("NDA"). Any such appeal to the NDA must be filed within seven (7) days from the issuance of the Commissioner's determination.

(b) An appeal to the NDA shall be heard on an expedited basis. If the term of the suspension is ongoing, the Player shall remain suspended pending the appeal (but not longer than the duration contained in the Commissioner's determination).

(c) The NDA shall hold an in-person hearing and shall determine whether the final decision of the League regarding whether the Player's conduct violated the League Playing Rules and whether the length of the suspension imposed were supported by substantial evidence. The NDA shall issue an opinion and award as soon as practicable. The NDA shall have the authority to consider any evidence relating to the incident even if such evidence was not available at the time of the initial Supplementary Discipline for On-Ice Conduct or at the time of the Commissioner's decision in connection with the appeal. The NDA shall have full remedial authority in respect to the matter should he/she determine that the Commissioner's decision was not supported by substantial evidence. The NDA's decision shall be final and binding in all respects and not subject to review.

**National Hockey League Official Rules 2015-2016**

**Rule 40 – Physical Abuse of Officials**

**APPLICABLE RULES:**

40.1  **Game Misconduct** – Any player who deliberately applies physical force in any manner against an official, in any manner attempts to injure an official, physically demeans, or deliberately applies physical force to an official solely for the purpose of getting free of such an official during or immediately following an altercation shall receive a game misconduct penalty. In addition, the following (**40.2, 40.3, 40.4**) disciplinary penalties shall apply.

40.2  **Automatic Suspension – Category I -** Any player who deliberately strikes an official and causes injury or who deliberately applies physical force in any manner against an official with intent to injure, or who in any manner attempts to injure an official shall be automatically suspended for not less than twenty (20) games. (For the purpose of the rule, "intent to injure" shall mean any physical force which a player knew or should have known could reasonably be expected to cause injury.)

40.3  **Automatic Suspension – Category II** – Any player who deliberately applies physical force to an official in any manner (excluding actions as set out in Category I), which physical force is

    applied without intent to injure, or who spits on an official, shall be automatically suspended for not less than ten (10) games.

40.4    **Automatic Suspension – Category III –** Any player who, by his actions, physically demeans an official or physically threatens an official by (but not limited to) throwing a stick or any other piece of equipment or object at or in the general direction of an official, shooting the puck at or in the general direction of an official, spitting at or in the general direction of an official, or who deliberately applies physical force to an official solely for the purpose of getting free of such an official during or immediately following an altercation shall be suspended for not less than three (3) games.

## Issue

The issue to be decided in this appeal is whether, based on the record presented at the hearing, the Commissioner's decision to affirm the 20-game suspension was supported by substantial evidence, as provided in Article 18.13(d) of the CBA.

## Summary Description of the Incident

All participants in this case have viewed the video coverage of the collision between Wideman and Henderson multiple times. As has been evident throughout this proceeding, interpretations of exactly what happened can and do differ. I state may own version in detail below, but a capsule summary should be given at the outset.

During the second period of the game between the Flames and the Predators on January 27, defenseman Wideman controlled the puck in the corner near the Flames' net and shot it down ice along the boards. Immediately afterward, Wideman was legally cross-checked by Miikka Salomaki of the Predators. The check against the boards left Wideman momentarily airborne and caused his head to snap against the glass. Apparently somewhat dazed, Wideman recovered for several seconds in a crouched position, then began skating along the boards toward the Flames' bench. As he approached the blue line, he raised his stick and then touched it to the ice, which was a recognized signal that he

was calling for a line change.  His signal was recognized on the bench, and another player, T.J. Brodie, stood and prepared to vault over the boards to the ice.  Meanwhile, Lineman Henderson was skating backward along the boards, approaching the Flames bench from down ice.  Henderson and Wideman converged immediately beside the closed gate into the bench.  Before they collided, Wideman raised his stick toward the vertical, then with the stick at approximately the one o'clock position made contact with Henderson, who fell to the ice, hitting his head on the boards on the way down.  Through subsequent applications of the concussion protocol, it was determined that both Wideman and Henderson had suffered concussions.  Both of them testified that they can remember almost nothing about what happened during the minutes immediately after their heads hit the glass or the boards.[5]

## Positions of the Parties

The PA argues preliminarily that the Commissioner applied the wrong standard in his decision.  His job, under the CBA language, was to decide whether the decision to suspend Wideman for twenty games was supported by clear and convincing evidence, but instead, the Commissioner shifted the burden to the Player's Association to rebut the clear and convincing evidence provided by the video footage of the incident.  On the merits in the present appeal, the PA argues that substantial evidence does not support the Commissioner's conclusion that what Wideman did constituted deliberate and intentional action within the meaning of League Rule 40, the framework of analysis adopted by the Commissioner as appropriate.  The requisite *mens rea* has not been, indeed could not be, proved.  The League's claim that the video speaks for itself – *res ipsa loquitur* – is unhelpful because the "thing" does *not* speak for itself; that is, it does not demonstrate that the requisite intent was present.  Indeed, the League's rebuttal witness, Stephen Walkom, testified that he thought Wideman "probably didn't intentionally mean to hurt [Mr. Henderson]."  This lack of intent to injure is demonstrated by the

---

[5] For Wideman, see the NDA Hearing Transcript at 142, 145, 190-191.  For Henderson, see the transcript at 510.

grievant's own testimony, by his exemplary record (eleven years as a professional hockey player with no discipline ever) and was not refuted by the text that Wideman sent to Greg Campbell, son of Colin Campbell, after the incident, in which Wideman, Campbell and others exchanged messages about how the referees' Union was stirring up the matter.

The PA argues, further, that the medical evidence given by Drs. Comper and Kutcher, is consistent with Wideman's testimony; so also was the testimony of the team physician, Dr. Ian Auld. There is no dispute that the Salomaki check against the boards produced a concussion. This was confirmed by application of the concussion protocol after the incident was over and Wideman was examined by Dr. Auld. Further, the PA argues that Wideman's actions do not remotely resemble the behavior of the two players who had previously received suspensions of twenty or more games.

Applying its understanding of the standard of review, the League argues that the NDA owes deference to the Commissioner and is not permitted to reweigh the evidence or to make new credibility determinations. The League asserts that the Commissioner's determination is clearly supported by substantial evidence. The video, the League claims, shows a blow that was so forceful that it was described by Henderson as feeling as if he "got hit by a bus." The blow, the League claims, sent Mr. Henderson "crashing forward onto the ice."[6] The League asserts, as Commissioner Bettman found, that the video shows that Wideman "struck" Henderson within the meaning of Rule 40.2. Wideman's actions were not a mere "reflex" to protect himself – the "blow" was "disproportionate to anything that would have been required as a matter of self-defense."[7] The League points out that even the two medical witnesses both describe what Wideman did in terms that fit within the language of Article 40.2 – that Wideman "struck" Mr. Henderson, or that Wideman "cross-checked the referee in the back, knocking him off his skates." The League's version is that Wideman "slammed both arms

---

[6] League Post-Hearing Brief, p. 11.
[7] League brief, pp. 12-13.

and his stick into Mr. Henderson's back, causing Mr. Henderson to crash forward on the ice."[8] This action, moreover, was clearly the deliberate application of physical force against Henderson with "intent to injure" as defined in Rule 40.2.

The League acknowledges that Wideman suffered a concussion from the Salomaki cross-check, but points out that Mr. Henderson also suffered a concussion. Further, the League discounts the testimony from Drs. Comper and Kutcher as inconclusive, after-the-fact, and speculative. The League discounts the testimony of the Players Association's witness Mathieu Schneider in a similar way, calling his testimony conclusory, speculative, and argumentative. By contrast, the testimony of Stephen Walkom established that what Wideman should have done was to drop his stick and implement a "bear hug" to avoid injury. This is what is often done when accidental, unavoidable contact or collisions occur on the ice. Finally, and fundamentally, the League argues that the PA's claim that Wideman was incapacitated in some way by his concussion was simply not demonstrated; indeed, it was effectively disproved by the testimony of the team doctor, Ian Auld, who saw no signs of any distress in the grievant's behavior after the incident and did not see any need to intervene, despite the fact that the concussion protocol after the game proved positive.

## Discussion

The parties agree that the video of the collision is the best evidence we have of exactly what happened. The video, therefore, is the place to start this discussion.[9]

---

[8] League brief, p. 14.
[9] In this discussion, I do not assess the testimony of Doctors Comper and Kutchner. Their professional pedigree and concussion expertise are of the highest quality, but since neither party contests the fact that both Wideman and Henderson suffered concussions, and since neither doctor was on the scene of the incident, and since both "face time" evaluations were brief and were several days after-the-fact, the doctors' medical opinions are necessarily inconclusive. The same is true of the testimony of the Calgary Flames' lead physician, Dr. Ian Auld. Also, concussions are devilishly difficult to diagnose and manage; in significant measure the treatment must be based on what the patients say about how they feel, and this is often slippery ground.

**Close Analysis of the Video**

My frame-by-frame review of the video produces the following narrative: After Wideman was cross-checked by Solamaki and was able to raise himself out of his crouched position, he began skating toward the bench, training his eyes on the gate that permits access to the bench. His head was up as he approached, so it seems clear that as Henderson skated backwards, Henderson would have come into Wideman's field of vision. It is possible, given the speed of events and Wideman's condition, that Henderson may have been but a blurred distraction. Whether or not this was so, Henderson was not flat against the boards when he first entered the video screen. He appeared to be moving away from the boards as he skated backwards, but when T.J. Brodie vaulted the boards right in front of Henderson, this caused Henderson to veer back toward the boards just as he and Wideman made contact. At that moment, Henderson's weight was on his left skate, which may have made him more vulnerable to an unexpected push against his back than he might otherwise have been. It is impossible to be completely certain, but it appears that the first contact between Wideman and Henderson was from Wideman's right hand while holding the stick at an upward angle at approximately the one o'clock position. Wideman then appears to have pushed with his left hand, causing Henderson's fall. The video confirms Henderson's testimony that he hit his head against the boards as he went down. He landed on his right elbow and right knee, then becoming prone on the ice.

Some observers of the video have characterized the contact between Wideman and Henderson as a cross-check, but this is inaccurate. A true cross-check would occur with the stick approximately horizontal and with both hands somewhat widely separated with palms facing downward towards the ice, thus allowing full pushing strength from arms and shoulders. Wideman's configuration was much different. His left hand was holding the end of the stick, left palm facing downward. His right hand

10

was eight-to-ten inches away with a reverse grip, right palm turned inward toward his own face. With the stick at approximately at the one o'clock position, this would not appear to be a configuration that would facilitate much pushing strength. Linesman Henderson testified that he felt as though he had been hit by a bus.[10] He described this feeling as due to have been hit "up in the shoulders" but it seems much more likely that the hit that he felt (and the only hit that could have produced his concussion) was when his head hit the boards on the way down.

Throughout this incident -- before, during and after the contact between Wideman and Henderson -- Wideman's head remained fixed toward the Flames' bench. He cannot have seen Henderson fall. Then as the gate giving access to the bench began to open from the inside, Wideman steped into the doorway just as another Nashville player skated closely by. Wideman then sat on the bench, did not think to close the gate, held his head down for several seconds, then raised it and looked around. He testified that he had no idea at the time that he had hit Henderson.

**Interpretation of Applicable CBA Provisions and League Rules**

As quoted above, Article 18.13(c) of the CBA provides that, "The NDA shall hold an in-person hearing and shall determine whether the final decision of the League regarding whether the Player's conduct violated the League Playing Rules and whether the length of the suspension imposed were supported by substantial evidence." In addition, "The NDA shall have the authority to consider any evidence relating to the incident even if such evidence was not available at the time of the initial Supplementary Discipline for On Ice Conduct decision or at the time of the Commissioner's decision in connection with the appeal." Taken literally, these provisions seem internally inconsistent. The NDA is to consider whether the two parts of the Commissioner's decision *were* supported by substantial evidence. If the answer to either part is no, then the League's actions cannot be upheld.

---

[10] NDA Hearing Transcript, p. 502.

But if the answer is yes, the NDA can nevertheless disaffirm what the Commissioner decided based on new evidence, or otherwise the "new evidence" language is meaningless. Logically, the provisions must authorize the NDA to decide whether the totality of the evidence presented at the NDA hearing comprises substantial support for the Commissioner's decision.

Article 18.13(c) also states that the NDA has "full remedial authority" after a determination that "the Commissioner's decision was [past tense] not supported by substantial evidence." Here, again taken literally, the logic of the language falters. If the Commissioner's decision *was not* supported by substantial evidence, then it cannot be affirmed and the NDA has full remedial authority. But, what if the NDA is persuaded by new evidence that the result reached by the Commissioner was incorrect? Again, this language must mean that the NDA has full remedial authority if the NDA determines that the totality of the evidence presented at the NDA hearing does not provide substantial support for the Commissioner's decision.

League Rule 40 protects against physical abuse of officials. Understandably, the Commissioner invoked Rule 40 as the appropriate framework for analysis of this case. Section 40.1 describes game misconduct as: (1) the deliberate application of physical force by any player in any manner against an official; (2) any attempt to injure or physically demean an official by a player; or (3) any deliberate application of physical force to an official solely for the purpose of getting free of an official during or immediately following an altercation. Clearly, only the first of these has application to the present case. And, taken literally, the deliberate application of physical force against an official would seem to encompass the "bear hug" that is employed to minimize the effect of an accidental collision. This could not have been the intention of the drafters of this League Rule. Common sense can play an interpretative part, but in any event, it seems clear that the action by Dennis Wideman in the present case falls within this first type of game misconduct.

The Commissioner found that Wideman's actions fit easily within the language of Section 40.2 – Category I, resulting in an automatic suspension of no fewer than twenty games. That brings us to the crux of the present case, the Commissioner's decision.

**Commissioner Bettman's Decision**

My task in this appeal is superficially uncomplicated. I am to decide whether, based on the record presented to me, I find that the Commissioner's decision upholding Wideman's twenty game suspension was supported by substantial evidence, as provided in Article 18.13(c) of the CBA.

The first step is to be clear about what Commissioner Bettman decided. The Commissioner upheld the 20-game suspension, and his decision had three elements: first, that the text of League Rule 40 ("Physical Abuse of Officials") provides an appropriate framework for analysis of the present case, even though Rule 40 is technically inapplicable because no one on the ice observed the incident, and thus no penalty was issued; second, assuming that Rule 40 is an appropriate framework, that what Wideman did fits within the language of Rule 40.2 (Automatic Suspension – Category I); third, that the additional factors itemized in Article 18.2 do not call for a change in the extent of Supplementary Discipline that was issued.

I agree with the Commissioner's conclusion that Rule 40 provides an appropriate framework for analysis. Preventing physical abuse of officials is extremely important in preserving the integrity of the game.

On the second element of the Commissioner's decision, I am with him part way, but only part way. I do not agree with the Commissioner's conclusion that Wideman's behavior fits easily within the wording of Rule 40.2, justifying automatically a minimum suspension of twenty games. Rule 40.2 is quoted in full above, but to repeat, it covers three types of player behavior: (1) deliberately striking

13

an official and causing injury; (2) deliberately applying physical force in any manner against an official with intent to injure; and (3) an attempt in any manner to injure an official.

Wideman did not, in my opinion, "deliberately strike" Henderson within the meaning of that phrase in Rule 40.2. Category I in Rule 40.2 describes offenses that are the most serious of all offenses in all three categories within Rule 40, automatically calling for not less than a 20-game suspension. Deliberately striking an official and causing injury would be an intentional act. On this point I agree with PA witness Mathieu Schneider's view that "striking someone requires intent" – "If I'm going to strike someone, punch someone, hit someone with my stick; if I strike you, I'm intending to hit you."[11]

My fundamental disagreement with Commissioner Bettman's decision, is that, based on the totality of the evidence presented to me, I do not think that Wideman's behavior was animated by an intent to injure Henderson, even taking into account the parenthetical definition of "intent to injure" in Rule 40.2 (discussed below). My opinion on the question of intent is supported by an important piece of new evidence, in the testimony of Stephen Walkom, the NFL's Senior Vice President and Director of Officiating. Mr. Walkom summarized his testimony as follows:

> "My testimony is that he [Wideman] was upset, he's skating to the bench, and he made a mistake, and he cross-checked the Linesman, and he knocked him to the ice with enough force to hurt him, even though he probably didn't intentionally mean to hurt him."[12]

Commissioner Bettman states in his opinion that, "Mr. Wideman struck Mr. Henderson with the shaft of his stick and caused him injury."[13] As is clear from my analysis of the video, above, I do not share this interpretation of what the video shows. The Commissioner states also that, "Mr.

---

[11] NDA Hearing Transcript, p. 363.
[12] NDA Hearing Transcript, p. 493. Also, it is worth noting in this connection that there was not even a scintilla of evidence to suggest why a player with Wideman's excellent disciplinary record would intentionally strike Linesman Henderson. Admittedly motive is not always necessary to prove intent, but the complete absence of any imaginable motive can give pause in assessing whether Wideman made contact with Henderson with intent to harm him.
[13] Bettman Opinion, p. 7.

Wideman himself acknowledged in his testimony that his blow to Mr. Henderson's back was the kind of blow that can reasonably be expected to cause injury."[14] This, however, is not persuasive. The Commissioner cites the following exchange between NHL counsel and Wideman at the hearing before him:

> Q. And when you couldn't get around him, why didn't you simply gab him rather than do what you did?
>
> A. Because I didn't see him to the very last second, and it's just a reaction to go like this [**motion**]. When you're going to run into someone, your initial reaction isn't to hug him. I was trying to get out of the way.
>
> Q. *Looking at the video now, putting aside what you actually did*, you would agree with me that striking somebody like that is the kind of conduct that could cause an injury, right?
>
> A. Right.[15]

This exchange, ending in a hypothetical, does not seem to me to constitute the acknowledgement that the Commissioner describes.

At the end of his opinion, the Commissioner recognized that a lesser penalty than a 20-game suspension was possible, but he saw no basis for it. Here, I disagree. League Rule 40.3 provides for an automatic penalty of not less than ten games for Category II offenses – including when a player "deliberately applies physical force to an official in any manner (excluding actions set out in Category I), which physical force is applied without intent to injure." This is the description into which, in my opinion, Wideman's actions fit easily.[16]

---

[14] Ibid.
[15] Bettman Hearing Transcript (within Joint Exhibit 1), p. 79 (emphasis added).
[16] In his opening statement at the NDA hearing, counsel for the League said: "Let me state emphatically that the League does not invite, does not invite some notion of splitting the baby here. That's not what this is about." NDA Hearing

In reaching this conclusion, the parenthetical within League Rule 40.2 should be addressed. Rule 40.3 excludes actions set out in Category I (that is, in League Rule 40.2), and the parenthetical within rule 40.2 states the following: "(For the purpose of the Rule, 'intent to injure' shall mean any physical force which a player knew or should have known could reasonably be expected to cause injury.)" The League argues that Wideman's actions were, at the least, actions that Wideman knew or should have known could reasonably be expected to cause injury. Commissioner Bettman agreed. What, exactly, Wideman should have known, however, is not an easy question to answer. I do not think the parenthetical language should be interpreted as introducing the idealized "reasonable person" who occupies such a prominent place in the developed common law. I construe the parenthetical as encompassing what the player should have known, taking into account the specific circumstances that occurred. In Wideman's case, this means taking into account his concussed state, and I do not believe that in his concussed state, Wideman could or should have anticipated that his push would cause Henderson to fall and bang his head against the boards sufficiently hard to put Henderson also in a concussed state.[17]

Finally, a word is appropriate about the factors itemized in Article 18.2 of the CBA whenever Supplementary Discipline for On-Ice Conduct is to be imposed. Section 18.2 (c) of Article 18 of the CBA is quoted above. That provision allows a player's disciplinary history to be taken into account. As is shown by the underlined language in that provision, the factor would definitely apply to players who are repeat offenders. Yet the factor can also apply to players such as Dennis Wideman whose disciplinary history is completely clean except for the incident under evaluation. I take this factor to be a positive weight in Wideman's favor.

---

Transcript, pp. 97-98. I agree with counsel that any "splitting the baby" rationale would be inappropriate. The decision reached in this case is not of that type; rather, it puts Wideman's behavior in what I consider to be its proper place within League Rule 40, based on the totality of the evidence presented at the NDA hearing.

[17] It is worth noting that both Wideman and Henderson finished the game without further incident.

**<u>Decision</u>**

The Commissioner's basic conclusion -- that Wideman's on-ice behavior resulting in Linesman Henderson's concussion constituted physical abuse of an official calling for Supplemental Discipline for on-ice conduct -- was correct.  Also, the Commissioner's use of League Rule 40 ("Physical Abuse of Officials") as a framework for analysis was appropriate.  The Commissioner's conclusion, however, that Wideman's behavior constituted intentional action within the meaning of Rule 40.2, automatically triggering a penalty of not less than twenty games, is not endorsed in this appeal because, in my opinion, that conclusion is not substantially supported by the totality of the evidence presented to me at the NDA hearing.  In my judgment, the proper penalty should have been that specified in League Rule 40.3.  Taking into account Wideman's eleven years of discipline-free performance as a professional hockey player, there is no occasion to go beyond the ten game minimum specified in Rule 40.3.  Dennis Wideman's penalty, therefore, should be reduced from twenty games to ten games, and it is so ordered.

Respectfully submitted,

*James Oldham*

James Oldham
Neutral Discipline Arbitrator