UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |  |
|---|---|---|
| NATIONAL HOCKEY LEAGUE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 1:16 CV 04287 (AJN) |
| | : | |
| NATIONAL HOCKEY LEAGUE | : | |
| PLAYERS' ASSOCIATION, | : | |
| | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO CONFIRM ARBITRATION AWARD**

WEIL, GOTSHAL & MANGES LLP
Bruce S. Meyer
John R. Gerba
767 Fifth Avenue
New York, NY  10153
(212) 310-8000
bruce.meyer@weil.com
john.gerba@weil.com

SIDLEY AUSTIN LLP
Virginia A. Seitz
*Admitted Pro Hac Vice*
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8544
vseitz@sidley.com

Attorneys for Defendant NHLPA

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................3

ARGUMENT .......................................................................................................................13

I.  The NHL's Complaint Is Procedurally Improper and Should Be Dismissed;
and the NHL Cannot Now Timely File A Motion to Vacate the Arbitrator's
March 10, 2016 Award ...............................................................................................13

    A.  The NHL's Complaint is Procedurally Improper ...........................................13

    B.  Any Motion Filed Now Should Be Time Barred ............................................14

II.  The NHL's Arguments Provide No Grounds for Judicial Vacatur of the
Award, Which Should Instead Be Affirmed..............................................................16

    A.  The Arbitrator's Interpretation of the CBA's Provisions Addressing His
Standard of Review Is Correct and Entitled To Deference..............................18

    B.  The Arbitrator's Conclusion That the Commissioner's Order Was
Not Supported by Substantial Evidence is Correct and Entitled to
Deference .........................................................................................................21

    C.  The Arbitrator's Remedial Decision is Correct and Entitled to
Deference .........................................................................................................23

CONCLUSION....................................................................................................................25

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Andros Compania Maritima, S.A. v. Mark Rich & Co.*,
   579 F.2d 691 (2d Cir. 1978)...........................................................................17, 25

*E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*,
   531 U.S. 57 (2000)........................................................................................17, 20

*Garcia v. Bd. Of Educ.*,
   520 F.3d 1116 (10th Cir. 2008) .........................................................................20

*Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*,
   912 F.2d 608 (2d Cir. 1990)...............................................................................15

*Kappos v. Hyatt*,
   132 S. Ct. 1690 (2012)........................................................................................19

*Kruse v. Sands Bros. & Co.*,
   226 F. Supp. 2d 484 (S.D.N.Y. 2002).............................................................13, 15

*Lobaito v. Chase Bank*,
   No. 11-Civ-6883, 2012 WL 3104926 (S.D.N.Y. July 31, 2012)...........................14

*Local 97, Int'l Bhd. Of Elec. Workers v. Niagara Mohawk Power Corp.*,
   196 F.3d 117 (2d Cir. 1999)...............................................................................17

*Local 802, Associated Musicians of Greater N.Y. v. Parker Meridian Hotel*,
   145 F.3d 85 (2d Cir. 1998).................................................................................15

*Major League Baseball Players Ass'n v. Garvey*,
   532 U.S. 504 (2001).....................................................................................3, 16, 23

*NFL Mgmt. Council v. NFLPA*,
   820 F.3d 527 (2d Cir. 2016)....................................................................... passim

*O.R. Sec., Inc. v. Prof. Planning Assocs.*,
   857 F.2d 742 (11th Cir. 1988) ....................................................................... 13-14

*Orange & Rockland Utils., Inc. v. Local 503, IBEW*,
   No. 05-Civ-6320, 2006 WL 1073049 (S.D.N.Y. Apr. 21, 2006) ...................... 15-16

*Oxford Health Plans LLC v. Sutter*,
   133 S. Ct. 2064 (2013)........................................................................................22

*Questar Capital Corp. v. Gorter*,
   909 F. Supp. 2d 789 (W.D. Ky. 2012) ................................................................15

*Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*,
   116 F.3d 41 (2d Cir. 1997) ..............................................................................25

*T.S. v. Indep. Sch. Dist. No. 54*,
   265 F.3d 1090 (10th Cir. 2001) .......................................................................20

*United Paperworkers Int'l Union v. Misco, Inc.*,
   484 U.S. 29 (1987) ...........................................................................2, 3, 17, 22

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*,
   363 U.S. 593 (1960) ....................................................................................17, 23

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) ..........................................................................................14

*W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork,*
   *Linoleum & Plastic Workers of Am.*,
   461 U.S. 757 (1983) ......................................................................................3, 20

*Wackenhut Corp. v. Amalgamated Local 515*,
   126 F.3d 29 (2d Cir. 1997) ................................................... 16-17, 19, 20

**Statutes**

9 U.S.C. § 10 ............................................................................................................13

20 U.S.C. § 1415(i)(2)(C)(ii) ...................................................................................20

29 U.S.C. § 185 ........................................................................................................12

N.Y. C.P.L.R. § 7511(a) ...........................................................................................15

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO CONFIRM ARBITRATION AWARD**

The National Hockey League Players' Association ("NHLPA") files this memorandum in
support of its motion to dismiss the June 8, 2016 Complaint of the National Hockey League
("NHL"), seeking judicial review of an arbitration award, on the ground that this civil action is
improper and any properly filed action would be barred by the relevant statute of limitations.  In
the alternative, the NHLPA moves to confirm the March 10, 2016 Award of Neutral Discipline
Arbitrator, James Oldham ("Award"), which is attached to the Complaint as Exhibit D.

**INTRODUCTION**

NHL Commissioner Gary Bettman suspended Calgary Flames defenseman Dennis
Wideman for 20 games for colliding with a linesman as Mr. Wideman skated to the bench in a
daze after being checked into the boards during a game and sustaining a concussion.  The
NHLPA appealed the suspension to a neutral arbitrator under the grievance procedure in the
parties' collective bargaining agreement ("CBA").  The Arbitrator agreed with Mr. Bettman that
a suspension was warranted under the disciplinary provisions of the CBA and the NHL rules
governing physical contact with officials, but concluded that the suspension should be for 10, not
20, games because Mr. Wideman plainly had no intent to injure the linesman.  The NHL seeks to
challenge that Arbitration Award by filing a civil complaint; in doing so it has made two clear
errors.

First, the proper way to challenge an Arbitration Award is to file a motion to vacate the
Arbitration Award, not to file a complaint initiating a full civil action against the party who
prevailed in the arbitration.  The NHL's Complaint against the NHLPA should be dismissed
because it is plainly improper and contrary to the policies of expedition and severely limited

review embodied in the Labor Management Relations Act ("LMRA").  The NHL should not be permitted to file a motion to vacate in place of this Complaint, because any motion filed now would violate the ninety-day statute of limitations for motions to vacate imported from New York law under section 301 of the LMRA.

Second, even if this Court decides to allow the NHL to file a motion to vacate or to treat the NHL's Complaint as such a motion, it should be denied, and the NHLPA's Motion to Confirm the Arbitrator's Award should be granted.  All of the NHL's arguments challenge the Arbitrator's interpretation of the collective bargaining agreement and factual findings that led the Arbitrator to reduce Mr. Wideman's suspension.  The NHL entirely ignores the well-established principle, recently re-affirmed by the Second Circuit in a case involving the discipline of an NFL player, that "a federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in our law."  *NFL Mgmt. Council v. NFLPA*, 820 F.3d 527, 532 (2d Cir. 2016).  A federal court may "not require perfection in arbitration awards."  *Id.*  The court "must simply ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'"  *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  There can be no credible dispute that this was the case here.

The Arbitrator carefully interpreted and applied Article 18.13(c) of the CBA (which governs the scope of the arbitrator's authority to review Mr. Bettman's order disciplining Mr. Wideman), Article 18.2 of the CBA (discipline for on-ice conduct), and NHL Rule 40 (physical abuse of officials).  Specifically, the Arbitrator determined that in light of his express authority in Article 18.13(c) to consider new evidence, he was required to review the totality of the record,

including that new evidence, to determine whether substantial evidence supported Mr. Bettman's order. The Arbitrator further concluded, after reviewing the totality of the record, including new testimony from the NHL's Director of Officiating, other witnesses' testimony, and a video of the collision, that Mr. Bettman's order was not supported by substantial evidence. Finally, the Arbitrator concluded that the appropriate penalty for Mr. Wideman's conduct under NHL Rule 40 and Article 18.2 of the CBA was 10 games.

All of these arbitral decisions resolve "disputes regarding the application of a contract" which lie at the heart of a labor arbitrator's authority. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam). Indeed, "[b]ecause the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 765 (1983). When bargaining parties consent to arbitrate their disputes, "it is the *arbitrator's* view of the facts and of the meaning of the contract that they have agreed to accept," and "a court should not reject an award on the ground that the arbitrator misread the contract." *Misco*, 484 U.S. at 37-38 (emphasis added). The NHL's Complaint quarrels with the Arbitrator's interpretation of the agreement and the record and is without merit; the NHLPA's Motion to Confirm should be granted.

## BACKGROUND

1. *Framework For Discipline For On-Ice Conduct.* Discipline of NHL players for on-ice conduct is governed by the NHL Rules and the CBA (relevant portions attached to the Complaint as Exhibit A).

The NHL Rules allow game officials to impose specified penalties for on-ice conduct. Rule 40 (attached to Complaint as Exhibit B) specifically addresses discipline for "Physical Abuse of Officials." Rule 40 creates three categories of offense, the first two of which are relevant here: Category I is defined in Rule 40.2, which states that a player "who deliberately applies physical force in any manner against an official with intent to injure" shall receive a minimum suspension of twenty (20) games. Category II is defined in Rule 40.3, which states that a player "who deliberately applies physical force to an official in any manner (excluding actions as set out in Category I), which physical force is applied *without intent to injure* . . . shall be automatically suspended for not less than ten (10) games." (Emphasis added). Rule 40.2 further states: "For the purpose of the rule, 'intent to injure' shall mean any physical force which a player knew or should have known could reasonably be expected to cause injury."[1]

The CBA authorizes an NHL Commissioner or his or her designee to impose supplementary discipline, beyond that imposed by the game officials, for on-ice conduct that is alleged to violate NHL Rules, taking specified factors into account, including the type of conduct, the injury at issue, the player's history of discipline, and the game situation. *See* CBA art. 18.1, 18.2. Acting on behalf of a player, the NHLPA has the right to appeal such supplementary discipline to the Commissioner. *Id.* art. 18.12. In deciding such an appeal, the Commissioner must determine whether the alleged Rule violation and discipline are supported by "clear and convincing evidence." *Id.* If the Commissioner so determines, his decision is final and binding in all respects and not subject to further appeal unless the discipline is a suspension of six or more games. *Id.* If the player was suspended for six or more games, the NHLPA, on

---

[1] Although Rule 40 does not expressly govern the incident because no official saw the collision and called an on-ice penalty, both the Arbitrator and Mr. Bettman agreed that the Rule provided the appropriate framework for this matter. Award 13.

behalf of the player, may appeal the Commissioner's decision to a Neutral Discipline Arbitrator
("Arbitrator" or "NDA").[2]  *Id.* art. 18.3.  The Arbitrator must "hold an in-person hearing and . . .
determine whether the final decision of the League regarding whether the Player's conduct
violated League Playing Rules and whether the length of the suspension imposed were supported
by substantial evidence." *Id.* art. 18.13(c).  In doing so, the Arbitrator "shall have the authority
to consider any evidence relating to the incident even if such evidence was not available at the
time of the initial Supplementary Discipline for On-Ice Conduct decision or at the time of the
Commissioner's decision in connection with the appeal." *Id.*  "The NDA's decision shall be final
and binding in all respects and not subject to review." *Id.*

   2. *Factual Context.*  During a January 27, 2016 National Hockey League game between
the Calgary Flames and the Nashville Predators, Flames defenseman Dennis Wideman was
cross-checked into the boards, causing him to be "momentarily airborne" and "caus[ing] his head
to snap against the glass."  Award 6.[3]  "Apparently somewhat dazed, Wideman recovered for
several seconds in a crouched position, then began skating along the boards towards the Flames'
bench." *Id.*  He then raised his stick and "touched it to the ice, which is a recognized signal that
he was calling for a line change." *Id.* at 6-7.  At the same time, Linesman Donald Henderson, a
game official, was skating backwards towards the Flames' bench. *Id.* at 7.  Mr. Wideman and
Mr. Henderson collided "immediately beside the closed gate into the bench." *Id.*  Before they
collided, Mr. Wideman "raised his stick toward the vertical . . . and made contact with Mr.

---

[2]  The position of Neutral Discipline Arbitrator is a new position created by the current CBA that
took effect in September 2012.  As the Arbitrator explained, "[t]his is the first appeal to have
been implemented under the standards set forth in Article 18.13 of the CBA."  Award 3 n.4.

[3] The Complaint alleges that Mr. Wideman was "legally checked into the boards by Nashville's
Miika Salomaki," Compl. ¶ 13, but does not mention that the NHL "acknowledges that Wideman
suffered a concussion from the Salomaki crosscheck," Award 9, and that the Arbitrator found
that Mr. Wideman was "dazed." *Id.* at 6.

Henderson, who fell to the ice, hitting his head on the boards on the way down." *Id.* After the

game, the Flames' physician determined that both Mr. Wideman and Mr. Henderson had

suffered concussions.[4] *Id.* Mr. Wideman and Mr. Henderson both "testified that they can

remember almost nothing about what happened during the minutes immediately before their

heads hit the glass or the boards." *Id.*

As noted, NHL Rule 40 addresses Physical Abuse of Officials, and imposes penalties on

players who "deliberately appl[y]" physical force against officials, *inter alia*. *Id.* at 5 (quoting

Rule). Mr. Wideman was not penalized during the January 27 game. *Id.* at 2.

3. *Post-Game Proceedings.* On February 10, 2016, the NHL's Senior Executive Vice

President Colin Campbell held an informal hearing, and imposed a 20-game suspension on Mr.

Wideman for colliding with Linesman Henderson. Mr. Campbell's decision to impose the 20-

game suspension was "recorded on video and was released by the NHL to the media in that

format, along with a press release." *Id.* at 1 (referencing Feb. 3, 2016 Video Decision).

On behalf of Mr. Wideman, the NHLPA appealed that suspension to the Commissioner,

Gary Bettman, as authorized by Article 18.2 of the CBA. *Id.* Mr. Bettman held a hearing on

February 10, 2016. The NHL placed into evidence only the video of the incident and testimony

from Linesman Henderson, who was looking the other way and did not see the collision. *Id.* Mr.

Bettman also heard testimony from Mr. Wideman, as well as Dr. Paul Comper, a

neuropsychologist, and Dr. Jeffrey Kutcher, a sports neurologist with concussion expertise. *Id.*

---

[4] The Calgary Flames' concussion spotter noticed that Mr. Wideman had "motor
incoordination/balance" problems after he was checked into the boards. *See* Bettman Order 18
n.9 (Compl. Ex. C). The NHLPA argued that the team violated the Concussion Protocol by not
removing Mr. Wideman from the game and immediately performing the required concussion
testing, but neither Mr. Bettman nor the Arbitrator made any factual findings on that issue. *See
id.*

On February 17, 2016, Mr. Bettman affirmed the 20-game suspension.  He noted that his task was to determine whether the suspension "was supported by clear and convincing evidence."  Bettman's Order 2 (attached to Complaint as Exhibit C).  Based on his interpretation of the video and Mr. Wideman's testimony, Mr. Bettman concluded that clear and convincing evidence supported the conclusion that Mr. Wideman's conduct constituted a Category I offense under Rule 40.2, requiring a 20-game suspension.  *Id.* at 21-22.

The NHLPA appealed the Decision to the Arbitrator as authorized by Article 18.13 of the CBA.

4.  *The Parties' Positions In the Arbitration.*  The Arbitrator held a hearing on February 25-26, 2016.  Both parties agreed that Article 18.13(c) of the CBA allowed the Arbitrator to consider "any evidence relating to the incident," CBA art. 18.13(c), even if it was not presented to the Commissioner, and both parties presented witness testimony, including from witnesses who did not testify before Mr. Bettman.  Compl. ¶¶ 52-55.  The NHL presented the videotape and testimony from Linesman Henderson, as they had done in the hearing before Mr. Bettman.  *Id.* ¶¶ 39, 55.  The NHL also called two new witnesses: Dr. Ian Auld, team physician for the Calgary Flames, and Stephen Walkom, Senior Vice President and NHL Director of Officiating.  *Id.* ¶ 55.  Dr. Auld testified about how he diagnosed Mr. Wideman with a concussion following the game.  Award 7.  Mr. Walkom testified about what he thought Mr. Wideman should have done to avoid injury to the linesman during the collision.  *Id.* at 9.  In Mr. Walkom's view, Mr. Wideman "made a mistake" and "cross-checked the Linesman," but he acknowledged that Mr. Wideman "probably didn't intentionally mean to hurt [Mr. Henderson.]"  *Id.* at 7, 14 (alteration in original).

As they had in the hearing before Mr. Bettman, the NHLPA presented testimony from Mr. Wideman, Dr. Comper and Dr. Kutcher.  Complaint ¶¶ 39, 54.  The NHLPA also called two new witnesses:  Brad Treliving, the General Manager of the Flames, and, as an expert witness, Mathieu Schneider, a former NHL defenseman who took the Arbitrator through the video of the collision frame by frame.  *Id.* ¶ 54.

In oral argument at the hearing, and in extensive post-trial hearing briefs, *see* Complaint ¶ 53, the NHLPA argued that the collision was an accident and Mr. Wideman should not be suspended at all.  The NHLPA argued that Mr. Bettman reached a different conclusion because he applied the wrong standard in his decision – that instead of determining whether Colin Campbell's discipline of Mr. Wideman was supported by "clear and convincing evidence," Mr. Bettman shifted the burden to the NHLPA to rebut the video evidence of the incident.  Award 7. The NHLPA further noted that the NHL was required to prove by substantial evidence that "what Wideman did constituted deliberate and intentional action within the meaning of League Rule 40" and that "[t]he requisite *mens rea* had not been, indeed could not be, proved."  *Id.*

The NHL relied on the argument that "the video speaks for itself – *res ipsa loquitur.*"  *Id.* The NHLPA argued that the NHL's position is wrong because the video does *not* demonstrate that Mr. Wideman acted deliberately.  Indeed, "the League's rebuttal witness, Stephen Walkom, testified that he thought Mr. Wideman 'probably didn't intentionally mean to hurt [Mr. Henderson],'  *Id.* (alteration in original).  The NHLPA further argued that the lack of intent to injure is demonstrated by the facts that all parties agreed that Mr. Wideman had a concussion at the time, and that Mr. Wideman had an eleven-year playing record unblemished by discipline or violence.  *Id.* at 7-8.

The NHL responded that the Arbitrator owed deference to Commissioner Bettman and was not permitted to reweigh the evidence or make new credibility determinations.  *Id.* at 8.  The NHL's position was that the video, by itself, constituted substantial evidence in support of Mr. Bettman's decision because it "was clearly the deliberate application of physical force against Henderson."  *Id.* at 8-9.  While acknowledging that Mr. Wideman had a concussion, the NHL "discount[ed] the testimony from Drs. Comper and Kutcher as inconclusive, after-the-fact, and speculative," and discounted Mr. Schneider's testimony and frame-by-frame analysis of the video "in a similar way."  *Id.* at 9.  The NHL claimed that the NHLPA's argument "that Wideman was incapacitated in some way by his concussion was simply not demonstrated."  *Id.* Instead, the NHL pointed to the testimony of Mr. Walkom who said Mr. Wideman should have "drop[ped] his stick and implement[ed] a 'bear hug' to avoid injury."  *Id.*

     5.  *The Arbitrator's March 10, 2016 Award.*

The Arbitrator commenced his legal analysis by quoting Article 18.13(c) of the CBA, which sets out his responsibilities – to wit, that he "shall hold an in-person hearing and shall determine whether the final decision of the League regarding the Player's conduct violated the League Playing Rules and whether the length of the suspension imposed were supported by substantial evidence," and that in doing so, he "shall have the authority consider any evidence relating to the incident even if such evidence was not available at the time of the initial Supplementary Discipline for On Ice conduct decision or at the time of the Commissioner's decision in connection with the appeal."  *Id.* at 11 (quoting Art. 18.13(c)).  The Arbitrator first pointed to a potential tension or "internal[] inconsisten[cy]" between the two provisions:  that if the discipline and suspension were supported by substantial evidence, the Arbitrator can "nevertheless disaffirm what the Commissioner decided based on new evidence, or otherwise the

'new evidence' language is meaningless." Award 11-12.  Thus, he concluded "the provisions

must authorize the [Arbitrator] to decide whether the totality of the evidence presented at the . . .

hearing comprises substantial support for the Commissioner's decision."  *Id.* at 12.

With respect to NHL Rule 40.1's prohibition on "the deliberate application of physical

force by any player in any manner against an official," the Arbitrator noted that "taken literally"

this language would include the "bear hug" recommended by the NHL as the appropriate action

to avoid injury in scenarios like those at issue here.  The Arbitrator determined "[t]his could not

have been the intention of the drafters of this League Rule," and so "[c]ommon sense can play an

interpretive part" here as well.  *Id.*

The Arbitrator then turned to Mr. Bettman's decision, which he described as having three

elements:  first, Mr. Bettman decided that the text of NHL Rule 40 provides an appropriate

framework for analysis of this case; second, that Mr. Wideman's conduct fits easily into the

language of Rule 40.2, which provides for an automatic 20-game suspension; and third, that the

additional factors itemized in Article 18.2 do not require a change in the Supplementary

Discipline issued.  *Id.* at 13.   The Arbitrator agreed with Mr. Bettman "that Rule 40 provides an

appropriate framework for analysis."  *Id.*  He did not agree however, that Mr. Wideman's

behavior "fits easily within the wording of Rule 40.2," which covers "(1) deliberately striking an

official and causing injury; (2) deliberately applying physical force in any manner against an

official with intent to injure; and (3) an attempt in any manner to injure an official."  *Id.* at 13-14.

The Arbitrator concluded that Mr. Wideman did not "'deliberately strike' Henderson

within the meaning of that phrase in Rule 40.2."  *Id.* at 14.  The Arbitrator explained that

"[d]eliberately striking an official and causing injury would be an intentional act."  *Id.*  And, he

continued, "based on the totality of the evidence presented to me, I do not think that Wideman's

behavior was animated by an intent to injure Henderson." *Id.* "My opinion on the question of intent is supported by an important piece of new evidence, in the testimony of Stephen Walkom, the N[H]L's Senior Vice President and Director of Officiating," which was "that he [Mr. Wideman] was upset, he's skating to the bench, and he had a mistake and he cross-checked the Linesman, and he knocked him to the ice with enough force to hurt him, even though he probably didn't intentionally mean to hurt him." *Id.* (quoting Walkom Test.).

The Arbitrator then addressed Mr. Bettman's assertion that Mr. Wideman "acknowledged" that his collision with Mr. Henderson "was the kind of blow that can reasonably be expected to cause injury." Award 15. The Arbitrator noted that Mr. Wideman's acknowledgement had come in response to NHL counsel saying, "[*l*]*ooking at the video now, putting aside what you actually did*, you would agree with me that striking somebody like that is the kind of conduct that could cause an injury." *Id.* (emphasis in original). The Arbitrator found that in this context, Mr. Wideman's response to this "hypothetical" was not "the acknowledgement the Commissioner describes." *Id.*

Finally, the Arbitrator addressed the appropriate penalty for Mr. Wideman's actions. He noted that NHL Rule 40.3 imposes "an automatic penalty of not less than ten games for Category II offenses – including when a player 'deliberately applies physical force to an official in any manner (excluding actions set out in Category I), which physical force is applied without intent to injure.'" *Id.* (quoting Rule 40.3). The Arbitrator recognized that Rule 40.2 states: "For the purpose of the Rule, 'intent to injure' shall mean any physical force that a player knew or should have known could reasonably be expected to cause injury." *Id.* at 16 (quoting Rule 40.2). But he concluded that this definition should not "be interpreted as introducing the idealized 'reasonable person' who occupies such a prominent place in the developed common law";

instead, the Arbitrator construed the definition "as encompassing what the player should have known, taking into account the specific circumstances that occurred." *Id.* He found that "[i]n Wideman's case, this means taking into account his concussed state," and that "in his concussed state," Mr. Wideman could not and should not have anticipated that his push would cause Henderson's fall and injury. *Id.*

The Arbitrator added that this remedial decision was supported by Article 18.2 of the CBA, which mandates consideration of specific factors in imposing Supplementary Discipline for On-Ice Conduct. *Id.* "That provision allows a player's disciplinary history to be taken into account." *Id.* The Arbitrator took Mr. Wideman's "completely clean" disciplinary history into account as "a positive weight in Wideman's favor." *Id.*

In sum, the Arbitrator found that "[t]he Commissioner's conclusion . . . that Wideman's behavior constituted intentional action within the meaning of Rule 40.2, automatically triggering a penalty of not less than twenty games" was "not substantially supported by the totality of evidence presented to me at the . . . hearing." *Id.* at 17. He determined that Rule 40.3 applied, and that "[t]aking into account Wideman's eleven years of discipline-free performance as a professional hockey player, there is no occasion to go beyond the ten game minimum specified in Rule 40.3." *Id.*

6. *The Complaint.* On June 8, 2016, the NHL filed its complaint under section 301 of the LMRA, 29 U.S.C. § 185, purportedly seeking to vacate the Arbitrator's March 10, 2016 Award. The Complaint alleges that the Arbitrator "disregard[ed] the standard of review set forth in the CBA," specifically that he failed to review Mr. Bettman's award to determine whether it was supported by "substantial evidence." *See*, *e.g.*, Compl. ¶¶ 5-6. The Complaint was not accompanied by a motion to vacate, and no motion to vacate was filed before June 10, 2016.

## ARGUMENT

I.     **The NHL's Complaint Is Procedurally Improper and Should Be Dismissed; and the NHL Cannot Now Timely File A Motion to Vacate the Arbitrator's March 10, 2016 Award.**

    A.     **The NHL's Complaint is Procedurally Improper.**

Instead of filing a motion to vacate the Arbitration Award, the NHL commenced this action by filing a Complaint under Rule 8 of the Federal Rules of Civil Procedure.  A federal action to vacate an arbitration award cannot be initiated by a civil complaint under the Federal Rules of Civil Procedure.  Judicial review of arbitration awards in federal court is commenced by a motion in which the moving party shoulders the burden of demonstrating that the Award must be vacated.  Critically, it is a *summary* proceeding conducted without pleadings (including an answer) or discovery or trial.

Under the Federal Arbitration Act ("FAA"), many courts have held that "a party cannot initiate a challenge to an arbitration award by filing a complaint or an application."  *Kruse v. Sands Bros. & Co.,* 226 F. Supp. 2d 484, 486-87 (S.D.N.Y. 2002) (citing *O.R. Sec., Inc. v. Prof. Planning Assocs., Inc.*, 857 F.2d 742, 745 (11th Cir. 1988)); 9 U.S.C. § 10.  Instead, the "request for vacatur must be made in the form of a motion."  *Kruse,* 226 F. Supp. 2d at 486.  As the Eleventh Circuit described:

> If, as [the petitioner] contends, the application to vacate the award may be brought in the form of a complaint, then the burden of dismissing the complaint would be on the party defending the arbitration award.  The defending party would be forced to show that the movant could not prove any facts that would entitle him to relief from the arbitration award.  If the defending party did not prevail on its motion to dismiss, the proceeding to vacate the arbitration award would develop into full scale litigation, with the attendant discovery, motions, and perhaps trial.

*O.R. Sec., Inc.*, 857 F.2d at 745 (citations omitted).  The court explained that this result cannot be tolerated because "[i]t is well-established that '[t]he purpose of the [FAA] was to relieve the congestion in the courts and to provide parties with an alternative method

for dispute resolution that would be speedier and less costly than litigation.' The policy

of expedited judicial action expressed in section 6 of the Federal Arbitration Act . . .

would not be served by permitting parties who have lost in the arbitration process to file a

new suit in federal court." [5] *Id.* at 745-46 (citation omitted) (first alteration in original).

This reasoning is fully applicable to judicial review of labor arbitration under section 301.

"The LMRA establishes a federal policy of promoting 'industrial stabilization through the

collective bargaining agreement,' with particular emphasis on private arbitration of grievances."

*NFL Mgmt. Council*, 820 F.3d at 536. "A major factor in achieving industrial peace is the

inclusion of a provision for arbitration of grievances in the collective bargaining agreement."

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960).

"Arbitration is the substitute for industrial strife." *Id.* Arbitration thus furthers speedy, efficient

and less expensive resolution of the bargaining parties' disputes; its purposes would be ill-served

by rules that allow those parties to re-litigate their dispute in federal court following arbitration.

Put differently, the public policy interests in limited, summary judicial review of any arbitration

award apply to labor arbitration; and in the labor arbitration setting, there are additional

important public policies at stake, including stable, peaceful labor relations. Any court challenge

to a labor arbitration award must be initiated by a motion to vacate, not a complaint.

B.    **Any Motion Filed Now Should Be Time Barred.**

The NHL's failure to file a motion to vacate renders this action improper, and any motion

to vacate filed now should be deemed time-barred as a matter of law. Section 301 of the LMRA

---

[5] This Court has allowed a complaint filed by a *pro se* litigant to serve as the equivalent of a
motion to vacate for purposes of the FAA. *See Lobaito v. Chase Bank*, No. 11-civ-6883, 2012
WL 3104926, at *1, 4-5 (S.D.N.Y. July 31, 2012). Courts routinely except *pro se* litigants from
procedural requirements, but there is no basis for excepting sophisticated entities regularly
engaged in litigation.

provides federal courts with jurisdiction to address motions to vacate or confirm arbitration awards issued pursuant to dispute resolution provisions in collective bargaining agreements.  *See*, *e.g.*, *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, 912 F.2d 608, 612 (2d Cir. 1990).  Congress did not specify a statute of limitations for suits under section 301, requiring reviewing courts to "look[] to the most appropriate state statute of limitations."  *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridian Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (citing *Hoffman Printing*, 912 F.2d at 612).  For review of arbitration awards pursuant to a collective bargaining agreement, the Second Circuit has held that New York Civil Practice Law and Rules ("C.P.L.R.") § 7511(a) provides the "most appropriate New York state statute of limitations."  *Local 802*, 145 F.3d at 88; *Hoffman Printing*, 912 F.2d at 612.  C.P.L.R. § 7511(a) provides that "[a]n application to vacate or modify an [arbitration] award may be made by a party within ninety days after its delivery to him."  N.Y. C.P.L.R. § 7511(a).  Here, the NHL failed to file a motion to vacate within 90 days.

In *Kruse*, 226 F. Supp. 2d at 486, a case under the FAA, this Court held that a party's failure to file a proper motion within 90 days of issuance of an arbitration award required dismissal of an action seeking vacatur of that award on the ground that the parties' action was time barred.  *Id.* at 487.  We recognize, however, that some courts treat an application for review as a "motion" sufficient to invoke judicial review of an arbitration award under the FAA, *see*, *e.g.*, *Questar Capital Corp. v. Gorter*, 909 F. Supp. 2d 789, 799-801 (W.D. Ky. 2012).  And, in *Orange & Rockland Utilities, Inc. v. Local 503, IBEW*, No. 05-civ-6320, 2006 WL 1073049 (S.D.N.Y. Apr. 21, 2006), this Court treated a complaint in a section 301 action as a motion to vacate, stating that "[t]he aim of preserving the[] … policy benefits [of LMRA § 301] precludes

this Court from enforcing a hard-and-fast procedural rule for seeking relief from an arbitration award," including requiring a motion rather than a complaint.  *Id.*  at *2-*3.

Respectfully, we disagree with that conclusion and do not believe it is applicable to sophisticated bargaining parties in a long term relationship where both are represented by experienced counsel.  Judicial review of arbitration is supposed to be an expedited, summary process where the burden is on the challenger.  And, in light of the Congressional policy favoring arbitration, courts rigorously enforce the limits on judicial review of arbitration awards.  The procedural limits on judicial review – requiring a party who seeks to vacate an award to timely file a motion – should not be treated differently than the substantive limits, particularly where, as here, the parties are knowledgeable entities in a mature bargaining relationship.  Indeed, enforcing the constraints on judicial review of arbitral awards is even more critical in the context of the long term institutionalized relationships of collective bargaining parties than it is in the commercial arbitrations reviewed under the FAA.

We thus submit that any motion to vacate filed now should be time-barred.  At the very least, however, this Court should treat the NHL's filing not as a complaint, but as a motion which commences summary review of an arbitration award, not a civil action.

II.     **The NHL's Arguments Provide No Grounds for Judicial Vacatur of the Award, Which Should Instead Be Affirmed.**

The NHL challenges an arbitration award made pursuant to the parties' CBA which is governed by the "extremely limited" judicial review of labor arbitration decisions under section 301 of the LMRA.  *See Garvey*, 532 U.S. at 507.  Since the Act's inception, the Supreme Court has emphasized the need for federal judges to defer to the parties' labor arbitrator and to enforce an arbitral award if it "draws its essence from the collective bargaining agreement" – *i.e.*, if the arbitrator has "plausibly" interpreted and applied the agreement.  *See Wackenhut Corp. v.*

*Amalgamated Local 515*, 126 F.3d 29, 31, 32 (2d Cir. 1997); *see also Andros Compania Maritima, S.A. v. Mark Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978) (arbitral award must be upheld if it "offer[s] even a barely colorable justification for the outcome reached").

More specifically, under the LMRA, federal courts "do not sit to hear claims of factual or legal error by an arbitrator." *Misco*, 484 U.S. at 38. As the Second Circuit recently held, "even if an arbitrator makes mistakes of fact or law," the court "may not disturb an award so long as he acted within the bounds of his bargained-for authority." *NFL Mgmt. Council*, 820 F.3d at 532; *see also E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (court must uphold the award even if it "is convinced [the arbitrator] committed serious error"); *Local 97, Int'l Bhd. Of Elec. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124-25 (2d Cir. 1999) (court must enforce the award notwithstanding its view that the decision is "very incorrect"). The court's review is so limited "[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Misco*, 484 U.S. at 37-38. The "federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).

In its Complaint, the NHL identified three purported "errors" in the Award: (i) the Arbitrator "did not apply the CBA mandated standard of review"; (ii) the Arbitrator was incorrect in finding that "the Commissioner's Order was not supported by substantial evidence"; and (iii) the Arbitrator exceeded his authority in determining that Mr. Wideman's 20-game suspension should be reduced to 10 games. Compl. ¶¶ 6, 65(g). With respect to each, the NHL

asks this Court to substitute its judgment for the Arbitrator's and ignores the established deferential nature of judicial review in these circumstances.

> A.     **The Arbitrator's Interpretation of the CBA's Provisions Addressing His Standard of Review Is Correct and Entitled To Deference.**

Although the NHL recognizes that the Arbitrator "articulated the issue to be decided in the appeal as whether the Commissioner's decision to affirm the twenty (20) game suspension of Mr. Wideman was supported by substantial evidence," it argues "that is not, in fact, the standard he applied." *Id.* ¶ 56.  Thus, the NHL claims, the Arbitrator "exceeded his authority" under the CBA by conducting a *de novo* review instead of adhering to the "substantial evidence" standard. *Id.* ¶ 6.

A simple review of the Award refutes the NHL's view.  First, the Arbitrator accurately quotes Article 18.13(c) of the CBA, including the "substantial evidence" standard of review, and properly states the issue for decision.  Award 6.  But, the Arbitrator, unlike the NHL, recognized the significance of the additional sentence in Article 18.13(c), providing that the Arbitrator "shall have the authority to consider any evidence relating to the incident even if such evidence was not available at the time of the initial Supplementary Discipline for On-Ice Conduct or at the time of the Commissioner's decision in connection with the appeal."  Nowhere in its Complaint does the NHL address this provision.

As the Arbitrator observed, there is a potential tension or "internal[] inconsisten[cy]" between the sentence in Article 18.13(c), stating that the arbitrator is to decide whether Mr. Bettman's decision is supported by "substantial evidence," and the sentence stating that the arbitrator "shall have the authority to consider" relevant evidence, even if it was "not available" at "the time of the Commissioner's decision."  Award 11.  The Arbitrator resolved the conflict by saying that even if Mr. Bettman's decision about discipline and suspension was supported by

substantial evidence at the time it was made, the Arbitrator can "nevertheless disaffirm what the Commissioner decided based on new evidence, or otherwise the 'new evidence' language is meaningless." *Id.* at 12.  Thus, the Arbitrator concluded, "the provisions must authorize the [Arbitrator] to decide whether the totality of the evidence presented at the . . . hearing comprises substantial support for the Commissioner's decision." *Id.*

This interpretation of Article 18.13(c) is both plausible and derived from the CBA – which fully insulates it from judicial review.  *See Wackenhut*, 126 F.3d  at 32 and cases cited *supra* at p. 17.  Indeed, the Arbitrator's reading of the provision is entirely consistent with the approach taken by courts confronted with similar provisions in statutes.  In that setting, courts have found that a reviewing body which is both required to defer to an administrative decision maker *and* authorized to receive new evidence should make a *de novo* finding when it receives and considers new evidence.  For example, in *Kappos v. Hyatt*, 132 S. Ct. 1690 (2012), the Supreme Court addressed the district court's review of the Patent and Trademark Office's decision denying a patent claim.  It held that "the district court may consider new evidence," and that "[i]n that role, it makes little sense for the district court to apply a deferential standard of review to PTO factual findings that are contradicted by the new evidence." *Id.* at 1696.   The Court noted that the PTO "cannot account for evidence that it has never seen," and therefore that the reviewing court "must make its own findings *de novo* and does not act as the 'reviewing court' envisioned by the [Administrative Procedure Act]." *Id.*  "[A]t least in those cases in which new evidence is presented to the district court on a disputed question of fact[,] we are not persuaded by the [PTO] Director's suggestion that [the review] proceedings are governed by the deferential principles of agency review." *Id.* at 1697.

Other courts have reached the same conclusion, examining similar provisions of other statutes. Like the Patent Act, the Individuals with Disabilities Education Act ("IDEA") requires the district court reviewing an Administrative Law Judge decision about an Individualized Educational Program ("IEP") for a student to "hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii). In that setting, "[u]nlike the deferential review typically afforded to administrative adjudication of statutory claims, Congress requires district courts to apply a modified *de novo* standard when reviewing agency disposition in the IDEA context." *Garcia v. Bd. Of Educ.*, 520 F.3d 1116, 1125 (10th Cir. 2008). *See also T.S. v. Indep. Sch. Dist. No. 54*, 265 F.3d 1090, 1093 (10th Cir. 2001) ("we actually apply a modified *de novo* review, which entails an independent review of the evidence").

In sum, the NHL's argument that the Arbitrator erroneously applied a *de novo* standard of review suffers from a fatal flaw: it ignores that the Arbitrator was reconciling his authority to receive and consider new evidence with the requirement that he determine whether substantial evidence supported Mr. Bettman's decision. "Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." *W.R. Grace & Co.*, 461 U.S. at 765. A court may not second-guess the arbitrator's reconciliation of contractual provisions addressing the scope of his review even if the "court is convinced he committed serious error." *E. Associated Coal*, 531 U.S. at 62. Here the Arbitrator's construction of the CBA's review provisions is correct because it accounts for and provides meaning to all of those provisions; at the very least, it is "plausibly grounded in the parties' agreement," and entitled to judicial deference. *Wackenhut*, 126 F.3d at 32.

B.     **The Arbitrator's Conclusion That the Commissioner's Order Was Not Supported by Substantial Evidence is Correct and Entitled to Judicial Deference.**

The NHL argues that the Arbitrator "did not conclude that the Commissioner's Order was not supported by substantial evidence," and that he "overturned the Commissioner's Order because his opinion differed from that of the Commissioner."   Compl. ¶ 67.   Review of the Award also refutes this contention.

Initially, the Arbitrator states the issue is "whether, based on the record presented to me, I find that the Commissioner's decision upholding Wideman's twenty game suspension was supported by substantial evidence, as provided in Article 18.13(c) of the CBA."  Award 13. Thus, the NHL's argument is that the Arbitrator did not do what he says he did.

The NHL is plainly wrong.  In the Award, the Arbitrator explained that "[d]eliberately striking an official and causing injury would be an intentional act," and that Mr. Wideman did not "'deliberately strike' Henderson within the meaning of that phrase in Rule 40.2" *Id.*  The Arbitrator expressly stated that "*based on the totality of the evidence presented to me*," Wideman did not have "an intent to injure Henderson" within the meaning of NHL Rule 40, "even taking into account the parenthetical definition of 'intent to injure' in Rule 40.2." *Id.* (emphasis added). Notably, in reaching this conclusion, the Arbitrator relied on "an important piece of new evidence, in the testimony of Stephen Walkom, the N[H]L's Senior Vice President and Director of Officiating." *Id.*  And he quoted Mr. Walkom's summary of his testimony, including that Mr. Wideman "knocked [Henderson] to the ice with enough force to injure him, *even though he probably didn't intentionally mean to hurt him*." *Id.* (emphasis added).

In addition, in considering the totality of the evidence concerning whether the collision was an intentional effort to injure the Linesman, the Arbitrator also construed the phrase "intent to injure" in Rule 40.2 and the parenthetical stating that the phrase includes actions "a player

knew or should have known could reasonably be expected to cause injury." *Id.* at 16.  The Arbitrator construed "the parenthetical as encompassing what the player should have known, taking into account the specific circumstances that occurred," which, in Mr. Wideman's case, "means taking into account his concussed state." *Id.*  The Arbitrator explained that "in his concussed state," Mr. Wideman could not and should not have anticipated that his push would cause Mr. Henderson's fall and injury.  *Id.*  The Arbitrator also reviewed the video frame by frame and cited the testimony of other witnesses, including Messrs. Wideman, Henderson, and Schneider.  *Id.* at 10-11, 14.  Finally, the Arbitrator considered it relevant that "there was not even a scintilla of evidence to suggest why a player with Wideman's excellent disciplinary record would intentionally strike Linesman Henderson," and stated that "the complete absence of any imaginable motive can give pause in assessing whether Wideman made contact with Henderson with intent to harm him."  *Id.* at 14 n.12.

The NHL disagrees with the Arbitrator's conclusion that, considering the totality of the evidence, Mr. Bettman's order was not based on substantial evidence.  But as a matter of law, that is not grounds for vacating the award.  As the Second Circuit recently explained, "[i]t is the arbitrator's construction of the contract and assessment of the facts that are dispositive, 'however good, bad or ugly.'"  *NFL Mgmt. Council*, 820 F.3d at 536 (quoting *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2071 (2013)).  Federal courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."  *Misco*, 484 U.S. at 38.  *See also id.* at 39 (an arbitrator's "improvident, even silly factfinding" is not a basis for refusal to enforce).

The NHL's argument appears to be based on the Arbitrator's phrasing in the Award, specifically the Arbitrator's tendency to frame his conclusions as his "version" or his "analysis"

or his "interpretation" of the facts or the CBA.  *See* Compl. ¶ 65(a)-(f).  The NHL states that this phrasing shows that the Arbitrator "did not conclude that the Commissioner's Order was not supported by substantial evidence," but that he "overturned the Commissioner's Order because his opinion differed from that of the Commissioner."  *Id.* ¶ 67.  An arbitration award is not a statute to be parsed in this way.  Here, the Arbitrator expressly states that on the "totality of the record," including new evidence the CBA specifically authorized him to consider, Mr. Bettman's decision that Mr. Wideman deliberately struck Linesman Henderson was not supported by substantial evidence.  The Arbitrator's elaboration and explanation of the record and his interpretation of the CBA in terms of his "opinion" or "interpretation" or "analysis" must all be viewed in that context.  The statements are simply the building blocks of his conclusion that the record as a whole did not provide substantial evidence supporting Mr. Bettman's order.  The NHL's disagreement with the Arbitrator's view of the record and the CBA is not grounds for vacatur.  *See Garvey*, 532 U.S. at 570 (Supreme Court summary reversal of lower court's decision "overturn[ing] the arbitrator's decision because it disagreed with the arbitrator's factual findings, particularly those with respect to credibility").

C.     **The Arbitrator's Remedial Decision is Correct and Entitled to Deference.**

Finally, the NHL takes issue with the Arbitrator's decision to reject both parties' positions about appropriate discipline – the NHL's support for a 20-game suspension and the NHLPA's contention that no suspension was appropriate – and to instead impose a 10-game suspension.  Compl. ¶¶ 65(g), 66.  But, as the Supreme Court has noted, the arbitrator "is to bring his informed judgment to bear in order to reach a fair solution of a problem.  *This is especially true when it comes to formulating remedies*."  *Enter. Wheel & Car*, 363 U.S. at 597 (emphasis added); *see also NFL Mgmt. Council*, 820 F.3d at 536-37 ("we do not consider

whether the punishment imposed was the most appropriate, or whether we are persuaded by the arbitrator's reasoning").

Again, the Arbitrator's decision is firmly grounded in the CBA and in the NHL Rule that Mr. Bettman himself found relevant.  The Arbitrator noted that NHL Rule 40.3 imposes "an automatic penalty of not less than ten games for Category II offenses – including when a player 'deliberately applies physical force to an official in any manner (excluding actions set out in Category I), which physical force is applied *without intent to injure*.'"  Award 15 (quoting Rule 40.3) (emphasis added).  The Arbitrator concluded that "[t]his is the description in which, in my opinion, Wideman's actions fit easily." *Id.*  He further explains that he is not "splitting the baby" by relying on this provision to reduce Mr. Wideman's suspension to 10 games.  Instead, he stated, applying this rule "puts Wideman's behavior in what I consider to be its proper place within League Rule 40, based on the totality of the evidence presented at the NDA hearing." *Id.* at 16  n.16.

The Arbitrator added that this remedy finds support in Article 18.2's instruction that decision makers take into account specific factors in imposing Supplementary Discipline for On-Ice Conduct, including "a player's disciplinary history." *Id.* at 16.  The Arbitrator took note of Mr. Wideman's "completely clean" disciplinary history as "a positive weight in Wideman's favor." *Id.*  And, he concluded, "[t]aking into account Wideman's eleven years of discipline-free performance as a professional hockey player, there is no occasion to go beyond the ten game minimum specified in Rule 40.3." *Id.* at 17.

\* \* \* \*

We respectfully submit that the Arbitrator's Award is carefully explained, grounded in the parties' CBA, and correct on the merits.  But even if the Arbitrator's reasoning or the merits

of his decision were far less clear, the Award would still be valid and enforceable.  Indeed,

"[w]hen an 'arbitrator explains his conclusions in terms that offer even a barely colorable

justification for the outcome reached, confirmation of the award cannot be prevented by litigants

who merely argue, however persuasively, for a different result.'" *Saint Mary Home, Inc. v. Serv.*

*Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997) (alteration and omissions

omitted) (quoting *Andros Compania Maritima*, 579 F.2d at 704).  The Award easily meets that

standard and should be confirmed.

## CONCLUSION

The Court should dismiss the NHL's action as inappropriate without leave to refile on the

ground that any motion to vacate would be barred by the applicable statute of limitations.  In the

alternative, the Court should grant the NHLPA's motion to confirm the award.

Dated:  July 29, 2016

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: /s/ Bruce S. Meyer
     Bruce S. Meyer
     John R. Gerba
     767 Fifth Avenue
     New York, NY  10153
     (212) 310-8000
     bruce.meyer@weil.com
     john.gerba@weil.com

     SIDLEY AUSTIN LLP
     Virginia A. Seitz
     *Admitted Pro Hac Vice*
     1501 K Street, N.W.
     Washington, D.C.  20005
     (202) 736-8544
     vseitz@sidley.com

     *Attorneys for Defendant NHLPA*